USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/08/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DETWEILER,

                         Plaintiff,

   -against-

ROBERT BUMP CONSTRUCTION, LLC and
JACOB BUMP,

                         Defendants.

No. 23-CV-975 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff John Detweiler ("Plaintiff") brings this action against Robert Bump Construction, LLC and Jacob Bump ("Defendants") asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), *et seq.*; New York State Labor Law ("NYLL"), Article 19, §§ 650, *et seq.*; NYLL §§ 193, 198, and 215; and common law breach of contract. Before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

    For the following reasons, Defendants' motion to dismiss is GRANTED, in part, and DENIED, in part.

## BACKGROUND

    The following facts are drawn from Plaintiff's Complaint ("Compl.," ECF No. 1) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    Plaintiff was employed by the Defendants from June 25, 2020 until August 26, 2022 as the "Director of Project Management". (Compl. ¶¶ 15-16). Plaintiff had no supervisory or managerial duties, nor independent authority or discretion in the performance of his duties. (*Id*. ¶ 16). Plaintiff did not directly supervise any employees, did not have the power to hire or terminate employees,

1

and his "[e]very decision . . . (design plans, vendor contracts, purchasing supplies) . . ." had to be approved by Defendant Bump. (*Id.*)

Plaintiff routinely worked more than 40 hours per week, averaging 47 hours per week during his tenure. (*Id.* ¶ 17). His compensation package included a $130,000 base salary and a $25,000 bonus. (*Id.* ¶¶ 18-19).

Plaintiff was not paid his $25,000 bonus for 2020 in March 2021, as scheduled; even so, Plaintiff did not press the issue, though he did not waive any entitlement to the bonus or agree to accept non-payment. (*Id.* ¶¶ 20-21). Similarly, Plaintiff did not receive his 2021 bonus in March 2022, as scheduled. (*Id.* ¶¶ 22-23).

After not receiving his 2021 bonus, Plaintiff complained multiple times to Defendant Bump regarding the failure to pay either of his annual bonuses. (*Id.* ¶¶ 24-25). Defendant Bump agreed to have a discussion regarding those bonuses, though Plaintiff struggled to set up a time to meet with Defendant Bump. (*Id.* ¶ 25). Plaintiff finally set a meeting with Defendant Bump on August 26, 2022, at which time Plaintiff was terminated without notice. (*Id.* ¶ 26).

## PROCEDURAL HISTORY

Plaintiff commenced this action against Defendants on February 6, 2023. (ECF No. 1.) The parties submitted a fully briefed motion to dismiss on July 11, 2023, including Defendants Notice of Motion to Dismiss ("Defs. Mot.", ECF No. 20), Memorandum of Law in Support ("Defs. Mem.", ECF No. 21), and Reply (ECF No. 23), and Plaintiff's Opposition (ECF No. 23).

## LEGAL STANDARD

I.   **Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Moreover, in addition to the facts alleged in the complaint, the Court may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted). The Court may also consider documents not incorporated by reference when the complaint nevertheless "relies heavily upon [their] terms and effect, thereby rendering the document integral to the complaint." *Id.* (internal quotations omitted) To be integral, the plaintiff must "rely on the terms and effect of a document in drafting the complaint . . . mere notice or possession . . ." is insufficient. *Id.* (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2022).

**DISCUSSION**

Plaintiff alleges five causes of action against Defendants: (I) unpaid overtime wages under the FLSA; (II) breach of contract with respect to his annual bonus; (III) unpaid overtime wages under the NYLL; (IV) unpaid wages under the NYLL; and (V) unlawful retaliation under the NYLL.

I.      **FLSA & NYLL Overtime Claims**

The Complaint's first and third causes of action allege Defendants failed to pay Plaintiff overtime wages during his tenure as an employee. (Compl. ¶¶ 27-36. 43-51). Both the FLSA and NYLL require that employees who are otherwise not exempt be paid at least one and one-half times the regular rate of pay for any time worked in excess of forty hours per week. 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 142.2.2.

  a.   **The Timeliness of Plaintiff's FLSA Claim**

Defendants assert that a portion of Plaintiff's FLSA claim is time-barred. (Def. Mem. p.4). The FLSA requires that an action for unpaid overtime compensation be commenced within two years of the inciting failure to pay. 29 U.S.C. § 255(a). A claimant can extend this window to three years, however, if she can show that the violation was willful. *Id*. At the pleadings stage, the burden is on the plaintiff to "allege facts . . . that give rise to a plausible inference that a defendant willfully violated the FLSA for the three-year exception to apply . . . ." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021).

Plaintiff's complaint fails to show Defendants willfully violated the FLSA by not paying overtime wages. Plaintiff simply makes the conclusory statements that Plaintiff "is owed time and half for all hours worked over 40 in a week[,]" and "that Defendants knowingly failed to pay [Plaintiff] overtime wages . . . under the FLSA [and further that] Defendants' violations were willful and without good faith or reasonable basis to believe that the failure to pay overtime wages was lawful." (Compl. ¶¶ 17, 32-33). Without more, a reasonable inference of willful violation by the Defendants is unavailable. Accordingly, to the extent that Plaintiff FLSA claim

relates Defendants' failure to pay overtime wages prior to February 6, 2021,[1] that claim and allegations are dismissed.

### b. Highly Compensated Employee Exemption of the FLSA

Defendants seek to raise the affirmative defense that Plaintiff is exempt from the overtime provisions of the FLSA because he qualifies as a "highly compensated individual". (Def. Mem. pp.5-8). An affirmative defense is properly raised in a Rule 12(b)(6) motion to dismiss when "the defense appears on the face of the complaint." *Whiteside*, 995 F.3d at 319 (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

"[E]mployees employed in a bona fide executive, administrative, or professional capacity . . . ." are exempt from the overtime provision of the FLSA. 29 U.S.C. § 213(a)(1).[2] Defendants argue that Plaintiff qualifies as an "administrative" employee and, moreover, a highly compensated employee. (Def. Mem. pp.5-8). A bona fide administrative employee is one "whose primary dut[ies] are the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers [and] include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Duties related to the management or general business operations of the employer or employer's customers include, *inter alia*, budgeting, purchasing, and procurement. *Id*. § 541.201(b).

A highly compensated employee is one that makes in excess of $107,432 annually and "customarily and regularly performs any one or more of the exempt duties or responsibilities of an . . . administrative . . . employee . . . ." *Id*. § 541.600(a)(1). When an employee qualifies as a highly compensated employee, the test for whether they also qualify as an administrative professional is

---

[1] Two years prior to the filing of this action. (*See* ECF No. 1).
[2] These exemptions are incorporated into NYLL via 12 N.Y.C.R.R. § 142.2.2.

modified. In that case, the employee need only "customarily and regularly perform[] any one or more of the exempt duties or responsibilities . . ." of an administrative professional. *Id*.; *see also Id*. § 541.600(c). Indeed, "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." *Id*. § 541.600(c). To "customarily and regularly" perform one or more of the exempt duties is perform them greater than occasionally, but within the normal and recurrent tasks performed ever workweek. *Id*. § 541.702.

Here, Plaintiff's annual salary brings him within the auspices of the highly compensated employee exception. (*See* Compl. ¶ 19). Even so, he still must "customarily and regularly" perform the duties of an administrative professional. The scope of Plaintiff's duties is not clear from the face of the complaint. Plaintiff was employed as the "Director of Project Management" and made decisions regarding "design plans, vendor contracts, [and] purchasing supplies"—though those decisions were always subject to final approval by Defendant Bump. (*Id*. ¶ 16). It would be a reasonable inference to draw that it is likely Plaintiff regularly and customarily engaged in these decisions and that such decisions amount, at least, to purchasing and procurement, as defined in 29 C.F.R. § § 541.201(b). To do so would be to Plaintiff's, the non-movant, detriment, however, and thus exceeds the bounds of this Court's proper review at the motion to dismiss stage. *See Ham v. Lenovo (United States) Inc.*, 664 F. Supp.3d at 562, 574 (S.D.N.Y. 2023) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). As such, since there are insufficient facts asserted in the complaint that Plaintiff was exempt from the FLSA, the Defendants may not yet avail themselves of the highly compensated individual affirmative defense. *Whiteside*, 995 F.3d at 319 (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). Moreover, Plaintiff's claims that he kept "diligent records" of his working hours and average forty-

6

seven hours of work per week make his overtime claims rise to a sufficient level of plausibility to survive the motion to dismiss. (Compl. ¶ 17); *see also, Iqbal*, 556 U.S. at 678-79 (2009).

Defendants motion to dismiss causes of action one and three on grounds that Plaintiff is exempt from the overtime protections of the FLSA and NYLL is therefore denied.

## II.     Breach of Contract

Plaintiff's second cause of action alleges Defendants breached his employment contract by failing to pay a $25,000 annual bonus for the years 2020 and 2021. (Compl. ¶ 37-42).

### a. Incorporation of the Plaintiff's Employment Contract into the Complaint

Preliminarily, the Court will determine whether the Plaintiff's employment contract, provided by Defendants, (*see* Defs. Mot, Ex. A, the "Employment Contract"), may be considered incorporated into the complaint. Pertinent here is the rule allowing a reviewing court to consider documents that are "integral to the complaint." *AECOM*, 19 F.4th at 106 (2d Cir. 2021) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted). To be integral, the plaintiff must "rely on the terms and effect of a document in drafting the complaint . . . mere notice or possession . . ." is insufficient. *Id.* (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2022). Reliance on a document "generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Nicosia v. Amazon. Com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 156 (2d Cir. 2006) (internal quotations omitted).

Plaintiff's complaint relies on his employment agreement and may properly be considered by the Court. Plaintiff explicitly references his annual salary and bonus multiple times in the complaint. (*See* Compl. ¶¶ 18-19, 22). Plaintiff purports to rely on the employment agreement, as his breach of contract claim is premised on the "guarantee" of his annual bonus. *AECOM*, 19 F.4th at 106 (2d Cir. 2021) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted). Finally, the employment agreement is a legal contract "upon which [P]laintiff's complaint stands or falls . . . ." *Amazon. Com, Inc.*, 834 F.3d at 230-31 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc.,* 458 F.3d at 156 (2d Cir. 2006) (internal quotations omitted).

### b. The Merits of Plaintiff's Breach of Contract Claim

Plaintiff argues that his employment contract guaranteed him an annual bonus of $25,000. (Compl. ¶¶ 1, 18-22, 38). Not so.

A court may not "rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous . . ." *Terwilliger v. Terwilliger*, 206 F.3d 240, at 245 (citing *Fiore v. Fiore*, 46 N.Y.2d 971, 973 (N.Y. 1979), "nor redraft a contract with its instinct for the dispensation of equity upon the facts of a given case." *Id.* (citing *DeVanzo v. Newark Ins. Co.*, 44 A.D.2d 39, 43 (2d Dep't 1974)). Under New York law, "extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face." *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (N.Y. 1990) (quoting *Intercontinental Planning v. Daystrom, Inc.*, 24 N.Y.2d 372, 379 (N.Y. 1969)) (internal quotations omitted).

The Employment Contract states, in pertinent part, that Plaintiff is eligible for a bonus. (Employment Contract p.1). "Bonus decisions and dollar amounts" are tied to annual performance

reviews, and the Employment Contract contains an acknowledgment "that *bonus distribution* and relative *bonus amount* decisions are made at the discretion of [Defendant Bump]." (*Id.*) (emphasis added). Finally, the applicable bonus is provided as $25,000 per year. (*Id.*)

Taken together, the foregoing make clear that Plaintiff's bonus is not guaranteed. The relevant provision's title only speaks to Plaintiff's eligibility for a bonus. (*Id.*). Moreover, any such bonus, including the amount, is expressly contingent upon two factors: (1) employee performance and (2) Defendant Bump's discretion. (*Id.*). The provision does have some tension regarding the bonus amount and to what year it applies. To wit, it states that the "bonus information stated in this document will reflect the amount received by the employee at the end of the current calendar year: 2020[,]" but nevertheless indicates that the $25,000 is applicable annually. (*Id.*). Whatever that misalignment, the Employment Contract grants Defendant Bump alone discretion on whether, and in what amount, bonuses are distributed—both in 2020 and on a go-forward basis. (*Id.*). In such situations, nonpayment does not give rise to a breach of contract claim. *O'Grady v. BlueCrest Capital Management LLP*, 646 Fed. App'x 2, 4 (2d Cir. 2016) (summary order) (citing *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 753 (N.Y. 1989) & *Kaplan v. Capital Co. of Am., LLC*, 298 A.D.2d 110, 111 (1st Dept. 2002)).

Finally, Plaintiff also includes certain statements regarding the negotiation of the Employment Contract in his complaint. (Compl. ¶¶ 18-19). Such statements constitute parol evidence that the Court may not consider, however, given the Employment Contract's unambiguity. *See W.W.W. Associates, Inc.*, 77 N.Y.2d at 163 (N.Y. 1990).

For the foregoing reasons, Plaintiff's breach of contract claim is dismissed for failure to plead a plausible claim.[3]

---

[3] Plaintiff does not allege that the Defendants, in the exercise of their discretion, agreed to pay him the bonus(es).

### III. NYLL Unpaid Wages Claim

Plaintiff asserts that Defendants' failure to pay him $25,000 as a bonus under the Employment Contract amounts to a failure to pay earned wages in violation of NYLL. §§ 191, 193, and 198. (Compl. ¶¶ 52-59).

Plaintiff's claim turns on whether the $25,000 bonus amount constitutes "wages" as defined in NYLL. Given the Court has already found Plaintiff had no contractual right to that bonus, as its disbursement was subject to Defendant Bump's sole discretion, that $25,000 amount is not "wages" under New York law. *See O'Grady*, 646 Fed. App'x at 4 (2d Cir. 2016) (summary order) ("The failure of O'Grady's contract claim also necessarily defeats his wage claim under [NYLL § 193]."); *see also Tierney v. Capricorn Inv'rs, L.P.*, 189 A.D.2d 629, 632 (1st Dept. 1993) (holding that where plaintiffs have no enforceable contractual right to wages, they are barred from bringing a claim under NYLL).

Consequently, Plaintiff's fourth cause of action for failure to pay earned wages is dismissed.

### IV. NYLL Retaliation Claim

Plaintiff's final cause of action alleges Defendants unlawfully retaliated against Plaintiff by firing him after he repeatedly complained that he was not paid legally due wages, violating NYLL § 215. (Compl. ¶¶ 60-63).

Section 215 prohibits employers from, among other things, discharging employees after making complaints alleging "the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the

commission." N.Y. Lab. L. § 215. To sustain a retaliation claim under NYLL, a plaintiff must plead: "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *DeJesus v. Bon Secours Community Hospital*, 23 CV 806 (VB), 2024 WL 554271, at *12 (S.D.N.Y. Feb. 12, 2024) The plaintiff must further show that their complaint was premised on a specific violation of NYLL, but need not, however, cite a specific statute. *Kassman v. KPMG LLP*, 925 F. Supp.2d 453, 472 (S.D.N.Y. 2013) (cleaned up). That is, the complaint made to an employer "must be of a colorable violation of the statute[.]" *Id*. (citing *Castagna v. Luceno*, No. 09 Civ. 9332 (CS), 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011)). Moreover, at the pleading stage, courts are directed to "generally assess the plausibility of the plaintiff's claim based on the facts alleged in the Complaint." *Rosenbaum v. Meir*, 658 F. Supp.3d 140, 150 (E.D.N.Y. 2023) (cleaned up).

Plaintiff has made out a retaliation claim under NYLL. Plaintiff states he complained numerous times that he was not paid the bonuses he believed he was owed. (*See* Compl. ¶¶ 24-25, 61). "[I]nternal complaints are explicitly covered by NYLL," and thus Plaintiff has adequately plead a protected activity under Section 215. *See Belizaire v. RAV Investigative and Sec. Services Ltd.*, 61 F. Supp.3d 336, 355 (S.D.N.Y. 2014); *see also* N.Y. Lab. L. § 215(1)(a)(i). Next, Plaintiff's termination is unquestionably an adverse employment action. (Compl. ¶¶ 26, 62).

Finally, the proximity in time between Plaintiff's repeated complaints and his termination, (*see id*. ¶¶ 23-26), is sufficient to draw an inference of causal connection between the two. Courts have held that a mere three days before a complaint and termination will give rise to a causal inference. *See Belizaire*, 61 F. Supp.3d at 355. In instances where termination followed months after a complaint, courts have declined to draw such an inference. *See Dejesus*, 2024 WL 554271,

at *12 (S.D.N.Y. Feb. 12, 2024) (holding that eight months between protected and activity and termination was too attenuated to draw a causal inference); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp.2d 253, 305 (S.D.N.Y. 2011) (finding the same with respect to a three-month gap before termination). Construing the complaint in a favorable light, Plaintiff raised his complaint regarding the failure to pay the bonus he believed he was owed at the August 26, 2022 meeting with Defendant Bump (Compl. ¶ 26). Plaintiff was terminated by Defendant Bump at that meeting. (*Id*.). That immediate termination establishes the causal inference.

Defendant's motion to dismiss Plaintiff's fifth cause of action is consequently denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, in part, and DENIED, in part.

To the extent that Plaintiff's first cause of action is premised on allegations that occurred prior to February 6, 2021, those allegations are dismissed with prejudice. Moreover, Plaintiff's second and fourth causes of action are dismissed with prejudice.

To the extent that Plaintiff's first cause of action is premised on allegations that occurred after February 6, 2021, Defendants' motion is denied. Defendants' motion is also denied with respect to Plaintiff's third and fifth causes of action.

Defendant is directed to file an answer on or before March 29, 2024. The parties are also directed to confer and complete a Case Management Plan and Scheduling Order (blank form attached hereto) on or before April 12, 2024.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 20.

Dated: March 8, 2024  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

UNITED STATES DISTRICT COURT                                                  Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                                                                                 **CIVIL CASE DISCOVERY PLAN**
                                 Plaintiff(s),            **AND SCHEDULING ORDER**

- against -


                                 Defendant(s).       _____ CV _____ (NSR)

-------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

   a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b. Depositions shall proceed concurrently.

   c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:   White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge